**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**DIANE MARIE SOKOLOWSKI,**

                **Plaintiff,**　　　　　　5:13-cv-744
　　　　　　　　　　　　　　　　　　　　　(GLS)
             v.

**COMMISSIONER OF SOCIAL
SECURITY,**

                **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Law Offices of Steven R. Dolson<br>126 North Salina Street, Suite 3B<br>Syracuse, NY 13202 | STEVEN R. DOLSON, ESQ. |
| Law Offices of Kenneth Hiller, PLLC<br>6000 North Bailey Avenue - Suite 1A<br>Amherst, NY 14226 | KENNETH R. HILLER, ESQ. |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261 | SIXTINA FERNANDEZ<br>Special Assistant U.S. Attorney |
| Steven P. Conte<br>Regional Chief Counsel<br>Social Security Administration<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | |

**Gary L. Sharpe**

**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Diane Marie Sokolowski challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Sokolowski's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

### II. Background

On December 2, 2010, Sokolowski filed an application for DIB under the Social Security Act ("the Act"), alleging disability since November 18, 2010. (Tr.[1] at 65, 160-66.) After her application was denied, (*id.* at 74-79), Sokolowski requested a hearing before an Administrative Law Judge (ALJ), which was held on February 6, 2012, (*id.* at 38-64, 80-81). On April 26, 2012, the ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

6, 10-30.)

Sokolowski commenced the present action by filing her complaint on June 25, 2013 wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 8, 9.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 11, 13.)

### III. Contentions

Sokolowski contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 11 at 3-10.) Specifically, Sokolowski claims that the ALJ erred in: (1) applying the treating physician rule; (2) assessing Sokolowski's nonexertional impairments; and (3) relying on the testimony of a Vocational Expert (VE) that conflicts with the Dictionary of Occupational Titles (DOT). (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 13 at 5-14.)

### IV. Facts

The court incorporates the factual recitations of the parties and the ALJ. (Dkt. No. 11 at 2, Dkt. No. 13 at 2; Tr. at 15-24.)

3

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Treating Physician Rule

First, Sokolowski argues that the ALJ failed to properly apply the treating physician rule. (Dkt. No. 11 at 3-5.) Specifically, Sokolowski contends that the ALJ failed to provide good reasons for discounting the opinion of treating physician Corliss Varnum, and improperly disregarded Sokolowski's subjective complaints of pain and fatigue which are consistent with Dr. Varnum's treatment notes and the common symptoms of fibromyalgia. (*Id.*) The court disagrees.

Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."[2] 20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ must provide "good reasons for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (internal quotation marks and citations omitted). "Nevertheless, where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of testimony presented to her or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead her to a conclusion of disability." *Id*. (internal quotation marks and citation omitted).

In January 2012, Dr. Varnum, who treated Sokolowski at Port City

---

[2] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

5

Family Medicine, noted that Sokolowski

> feels [that] her back has worsened. She can not stand or sit for more than an hour and she can only sleep for [three] hours max[, at which point] she has to get up for [thirty to sixty] minutes, sit up and/or walk[] around and . . . then go[] back to bed. She is in pain all the time.

(Tr. at 634.) The ALJ characterized this treatment note as Dr. Varnum's opinion that Sokolowski cannot work and must change positions every thirty minutes, and afforded such opinion "little weight" because it is not supported by the objective medical evidence and "appears to be based primarily on [Sokolowski's] subjective complaints." (*Id.* at 22.) However, the court agrees with the Commissioner that the statements contained in Dr. Varnum's January 2012 treatment note do not reflect his opinion of Sokolowski's functional limitations, but, rather, his notation of Sokolowski's subjective complaints. (Dkt. No. 13 at 5-6.) Indeed, the above referenced statement is contained under the heading "subjective" and included in Dr. Varnum's history of present illness. (Tr. at 634.)

Sokolowski does not argue that objective medical evidence supports her subjective complaints, but that, because she has been diagnosed with fibromyalgia, it was improper for the ALJ to discount such complaints. (Dkt.

6

No. 11 at 4-5.) While Sokolowski is correct that fibromyalgia is a disease that eludes objective measurement, *see Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003), the Second Circuit has held that "mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability." *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008). Interestingly, although treatment notes from Port City Family Medicine repeatedly indicate that Sokolowski was diagnosed with myalgia and myositis unspecified, (Tr. at 380, 398, 400, 405, 512, 516, 518, 520), Dr. Varnum did not diagnose Sokolowski with myalgia after his January 2012 examination, but, instead, diagnosed her with osteoarthritis, esophageal reflux, and skin sensation disturbance, (*id.* at 635-36). Thus, it is clear that Dr. Varnum's January 2012 treatment note did not indicate his opinion as to the severity of Sokolowski's fibromyalgia. However, consulting examiner Sandra Boehlert diagnosed Sokolowski with fibromyalgia after her January 2011 examination, and opined that it caused mild limitations to exertional activities. (*Id.* at 247-50.)

Furthermore, a Port City Family Medicine treatment note from November 18, 2010—Sokolowski's alleged onset date—indicates that Sokolowski "is considering not working while she attends physical therapy

7

and her various appointments[,] but is continuing to watch her grandkids [sic] a couple days a week." (*Id.* at 368.) Treating physician Liepke, "encouraged [Sokolowski] to stay active even if she choose to stop working temporarily," and noted that "she is probably better off not working for the next couple months in order to attend [physical therapy] and get all [her] testing done[,] but the goal is to return to work. I do not feel [that] she is permanently disabled at this point." (*Id.*) Thus, even if Dr. Varnum's January 2012 treatment note is properly characterized as his medical opinion, the ALJ's decision to give such opinion "little weight" is supported by substantial evidence. (*Id.* at 22, 634.)

B. **Nonexertional Limitations**

Next, Sokolowski contends that, because the ALJ found that her fibromyalgia is a severe impairment, the ALJ was required to include nonexertional limitations relating to pain and numbness in her residual functional capacity (RFC) determination. (Dkt. No. 11 at 5-8.) Further, Sokolowski asserts that the ALJ's RFC determination should have included nonexertional limitations related to her obesity, carpal tunnel syndrome, and degenerative changes in her lumbar spine. (*Id.* at 6-7.) The Commissioner counters, and the court agrees, that the ALJ's RFC

8

assessment is supported by the objective medical evidence and opinion evidence of record. (Dkt. No. 13 at 6-11.)

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). As pertinent here, nonexertional limitations affect only a claimant's ability to meet the demands of jobs other than the strength demands,[3] such as the ability to reach, handle, stoop, climb, crawl or crouch. *See* 20 C.F.R. § 404.1569a(c).

Here, the ALJ determined that Sokolowski retains the RFC to lift and carry twenty pounds occasionally and ten pounds frequently, and, in an eight-hour day, stand or walk for six hours and sit for six hours. (Tr. at 18.) Further, the ALJ concluded that Sokolowski can follow, understand, and

---

[3] The strength demands of work include sitting, standing, walking, lifting, carrying, pushing, and pulling. *See* 20 C.F.R. § 404.1569a(b).

perform simple instructions and tasks, and work in a low stress environment, defined as occasional decision-making and occasional changes in work setting. (*Id.*) In making her RFC determination, the ALJ relied on Sokolowski's daily activities, including her ability to babysit for her three young grandchildren, the lack of objective clinical findings, and the opinions of Dr. Boehlert, consultative psychiatrist Dennis Noia, and non-examining psychological consultant V. Reddy. (*Id.* at 18-23.)

Notably, the only medical source to offer an opinion as to the nonexertional limitations caused by Sokolowski's physical impairments was Dr. Boehlert, who opined that, due to pain, Sokolowski was mildly restricted in the use of her hands and fine motor activity. (*Id.* at 250.) Although the ALJ did not include this limitation in her ultimate RFC determination, at step five of the sequential analysis, the VE explicitly considered a restriction to occasional handling and fingering, and testified that there were existing jobs Sokolowski would still be able to perform. (*Id.* at 24, 61-62.) Accordingly, the ALJ's failure to include such a limitation in her RFC analysis is, at most, harmless error. *See Howze v. Barnhart*, 53 F. App'x 218, 222 (2d Cir. 2002) (holding that, even if the ALJ erred in failing to address the fact that the claimant uses a medically-required cane, such

error was harmless as the ALJ asked the VE to take the cane into account and there were still jobs available that the claimant could perform); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").

Although Sokolowski contends that the ALJ erred in failing to incorporate limitations resulting from her obesity into the RFC determination, (Dkt. No. 11 at 7), "there is no obligation on an ALJ to single out a claimant's obesity for discussion in all cases." *Cruz v. Barnhart*, No. 04 CIV 9011, 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006). Rather, "[w]hen an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the [claimant], the claimant's obesity is understood to have been factored into their decisions." *Yablonski v. Comm'r of Soc. Sec.*, No. 6:03-CV-414, 2008 WL 2157129, at *6 (N.D.N.Y. Jan. 31, 2008) (internal quotations and citations omitted). Here, Sokolowski points to no medical evidence that she is limited by her obesity, but, instead, argues that, generally, obesity "may" affect the ability to manipulate, climb, balance, stoop, and crouch. (Dkt. No. 11 at 7.)

Sokolowski essentially argues that, because she suffers from

11

fibromyalgia, the ALJ was required to credit her complaints of pain, and states that "[i]t is reasonable to conclude that a claimant with [her] impairments would have certain non-exertional limitations." (*Id.* at 6-7.) However, "[w]here there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings." *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999); *see Rivers*, 280 F. App'x at 22 (stating that, notwithstanding the diagnosis of fibromyalgia, the ALJ was not required to credit the claimant's testimony about the severity of her pain and the functional limitations that it caused). Additionally, "whether there is substantial evidence supporting the appellant's view is not the question," instead, the court must "decide whether substantial evidence supports *the ALJ's decision.*" *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d. Cir. 2013). Here, the ALJ determined that Sokolowski was not fully credible, noting that clinical findings indicate only mild or moderate symptoms[4] and Sokolowski's admitted activities were inconsistent with her alleged disabling symptoms

---

[4] Among other evidence, a December 2009 nerve conduction study was normal; an ambulatory EEG performed in February 2010 was within normal limits; EMG testing in December 2010 revealed only mild carpal tunnel syndrome and clinical evidence of right lateral femoral cutaneous neuropathy; and, in January 2011, Dr. Boehlert opined that Sokolowski was mildly limited in her ability to exert herself, ambulate, and use her hands, based on her examination results. (Tr. at 250, 324-25, 356-57, 571.) Further, the most recent treatment notes from Dr. Varnum, reveal no abnormal clinical findings, other than tenderness along her pectoralis muscle, which Dr. Varnum indicated Sokolowski had strained during "her recent move." (*Id.* at 627-30, 634-36.)

12

and limitations. (Tr. at 19-22.) The ALJ considered Sokolowski's various daily activities, including her ability to cook, clean, and do laundry, except for heavy lifting and vacuuming. (*Id.* at 19-20, 184, 241, 248.) Further, Sokolowski reported that she reads, watches television, does puzzles, uses the computer, goes shopping, and socializes with friends and family. (*Id.* at 184, 187-88, 241, 248.) In addition, Sokolowski testified that she plays "poker keno" once a month with friends, attends Lion's Club meetings twice a month, and goes to Weight-Watchers meetings once a week. (*Id.* at 52-53.) During the relevant period, Sokolowski babysat a couple of days a week for her three young grandchildren for four hours at a time. (*Id.* at 50, 367-68.)

In sum, the ALJ's credibility assessment and RFC determination are supported by substantial evidence.

## C. <u>Vocational Expert Testimony</u>

Finally, Sokolowski argues that, in making her step five determination that Sokolowski can perform other work in the national economy, the ALJ improperly relied on VE testimony that conflicts with the DOT. (Dkt. No. 11 at 8-10.) On the other hand, the Commissioner argues that the VE's testimony was consistent with the information contained in the DOT, and,

13

further, the ALJ's step five determination is supported by substantial evidence. (Dkt. No. 13 at 11-14.) Again, the court agrees with the Commissioner.

In making her ultimate disability determination, the ALJ must consider whether the claimant can do any other, less demanding work existing in the national economy. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c); *White v. Sec'y of Health & Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). To make such a determination, an ALJ may rely on the Medical-Vocational Guidelines, referred to as "the grids," found in 20 C.F.R. pt. 404, subpt. P, app. 2, as long as the claimant's age, education, work experience, and RFC coincide with the criteria of a rule contained in those Guidelines. *See* 20 C.F.R. § 404.1569; *see also Calabrese v. Astrue*, 358 F. App'x 274, 275 n.1 (2d Cir. 2009). However, "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by h[er] exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983)). In that case, the ALJ should consult with a VE before making a determination as to

disability.  *See id.*  Social Security Ruling 00-4p sets forth that the "[o]ccupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT."  65 Fed. Reg. 75,759, 75,760 (Dec. 4, 2000).  In the event of a conflict between the two, "the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled."  *Id.*

Here, the VE testified that a claimant of Sokolowski's age, education, work experience, and RFC can perform the jobs of ticket seller, cashier, and garment sorter.  (Tr. at 59-60.)  Sokolowski argues that this testimony was in conflict with the DOT which classifies a ticket seller and cashier at reasoning level three, meaning that the person must "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form, [and d]eal with problems involving several concrete variables in or from standardized situations."[5]  Dictionary of Occupational Titles, Code 211.467-030, 1991 WL 671853 (4th ed., 1991); *id.* Code

---

[5] The VE further testified that a claimant of Sokolowski's age, education, work experience, and RFC who has to change positions every thirty minutes and is limited to occasional handling and fingering can perform the jobs of surveillance systems monitor and telephone quotation clerk.  (Tr. at 62-63.)  These positions both require a reasoning level three. Dictionary of Occupational Titles, Code 379.367-010, 1991 WL 673224 (4th ed., 1991); *id.* Code 237.367-046, 1991 WL 672194.

211.462-010, 1991 WL 671840. Further, the DOT classifies a garment sorter at reasoning level two, which requires an individual to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* Code 222.687-014, 1991 WL 672131. According to Sokolowski, such reasoning requirements conflict with her restriction to simple instructions, directions, and tasks, and low stress work, including only occasional decision making and occasional changes in the work setting. (Dkt. No. 11 at 8-10; Tr. at 18.) However, a number of courts have held that jobs with DOT reasoning levels of two or three are compatible with limitations to simple and low stress work. *See, e.g., Reynolds v. Comm'r of Soc. Sec.*, No. 1:11-cv-00778, 2012 WL 2050410, at *6 (N.D.N.Y. June 6, 2012) (holding that a limitation to "simple work" does not preclude a job that has a reasoning development level of two or three); *Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 408-09 (D. Conn. 2012), *aff'd*, 515 F. App'x 32 (2d Cir. 2013) (holding that reasoning levels of two and three are not inconsistent with a limitation to short, simple instructions); *Cross v. Astrue*, No. 08-CV-0425, 2009 WL 3790177, at *8 (N.D.N.Y. Nov. 12, 2009) (finding no error in the ALJ's conclusion that a

16

claimant limited to simple, low-stress, and entry-level work, with no complex decision-making could perform jobs with a reasoning level of two or three); *see also Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (finding that two unskilled, level three reasoning jobs were not "complex"); *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (holding that level three reasoning was not inconsistent with the ability to perform only "simple work").

In this case, Sokolowski completed highschool in regular education classes and obtained her associates degree. (Tr. at 239.) In addition, consultative examiner Noia opined that Sokolowski can understand simple instructions, and perform simple and some complex tasks. (*Id.* at 242.) Further, psychological consultant Reddy opined that Sokolowski can perform the basic functional requirements of unskilled work. (*Id.* at 235.) Notably, all of the jobs that the VE testified Sokolowski was capable of performing are unskilled work.[6] (*Id.* at 60, 62.) Based on the foregoing, the court finds that the jobs identified by the VE are not incompatible with the

---

[6] Unskilled work, is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time" 20 C.F.R. § 404.1568(a). Thus, "little specific vocational preparation and judgment are needed" for unskilled work. *Id.* "The DOT lists a specific vocational preparation (SVP) time for each described occupation." SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). Under the regulations, unskilled work corresponds to an SVP level of one or two. *See id.*

17

limitations established by the ALJ.

**D.     Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Sokolowski's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 5, 2014
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court